IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

HUGHES V. HUGHES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

EMMETT TYLER HUGHES, APPELLANT,
V.
JULIE HUGHES, APPELLEE.

Filed September 16, 2014.    No. A-14-064.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Affirmed.

Joshua A. Johnson and Chris A. Johnson, of Conway, Pauley & Johnson, P.C., for appellant.

R. Bradley Dawson, of Lindemeier, Gillett & Dawson, for appellee.

IRWIN, PIRTLE, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Emmett Tyler Hughes (Tyler) appeals an order of the district court for Lincoln County denying his application to modify custody of the parties' minor child, Sierra Hughes. On appeal, Tyler argues that the court applied an "incorrect standard" in finding that he failed to demonstrate a material change of circumstances warranting modification of custody. Tyler's assertion is meritless, and we affirm.

## II. BACKGROUND

Tyler and Julie Hughes were divorced in December 2005. At that time, they had three minor children: Whitney Hughes, born in April 1990; Emmett Quinn Hughes (Quinn), born in November 1991; and Kathryn Hughes, born in December 1994. In the dissolution decree, the district court concluded that it lacked jurisdiction over Quinn, but awarded custody of Whitney and Kathryn to Julie, subject to reasonable rights of visitation for Tyler.

- 1 -

After the decree was entered, Tyler and Julie attempted "to work things out" and the two moved in with each other. In October 2006, the child who is the subject of this appeal, Sierra, was born. No legal proceedings concerning paternity, custody, or support for Sierra appear to have been undertaken at the time of her birth.

At some point, Tyler filed a complaint seeking to modify the dissolution decree with respect to custody of the parties' three older children and to establish custody of Sierra. In August 2009, the district court entered an order in which the court found that Tyler had failed to demonstrate a material change of circumstances justifying modification of custody of the parties' older children and found that custody of Sierra should be awarded to Julie, subject to reasonable rights of visitation for Tyler. In the record presented to us, this is the initial order establishing custody of Sierra.

In 2010, Julie was found to be in contempt of the court's order requiring her to provide reasonable rights of visitation to Tyler. The court provided her a period of 6 months to demonstrate that she could comply with the visitation order or face a potential jail sentence for the contempt. It appears that she complied with the visitation order.

In September 2012, Tyler filed a complaint seeking modification of the court's order of custody concerning Sierra. Tyler alleged in his complaint that "a material change of circumstance ha[d] occurred since [prior custody and support orders] were entered and the care, custody, and control of the parties' minor child, Sierra, should be transferred to" him. A review of the complaint indicates that Tyler did not specify the alleged material change of circumstances justifying modification of Sierra's custody. Julie answered the complaint and denied that there had been any such material change of circumstances.

In January 2013, Tyler moved to have Julie held in contempt again, alleging that she had not complied with prior orders concerning tax exemptions for the parties' children and concerning visitation with Sierra, and alleging that she had failed to pay a variety of Sierra's medical bills. Julie ultimately entered pleas of no contest to the allegations regarding the tax exemptions and visitation, and Tyler dismissed the allegations concerning medical bills. The court found Julie in contempt and ordered that she could purge the contempt finding by amending prior tax returns and by complying with an agreement of the parties concerning Tyler's visitation with Sierra during the pendency of the modification proceedings. Julie complied with these orders, and the finding of contempt was purged.

Trial was held on Tyler's complaint for modification in November 2013. At trial, Tyler presented evidence concerning his residence, where he had resided since 2007, and his employment, where he had been employed since 1998. He did not present any evidence that his living situation or employment had undergone any material changes since August 2009, when Julie was initially awarded custody of Sierra.

Tyler presented evidence about academic struggles experienced by Quinn and Kathryn after Julie had been awarded their custody in 2005. A review of the record reveals that Quinn's academic records presented by Tyler were generally reflective of performance through May 2009; Kathryn's academic records presented by Tyler were generally reflective of performance through January 2010. The records reflect that Quinn withdrew from all but one course taken at

high school in the fall of 2009. Kathryn finished her high school education under an alternative curriculum, but received her high school diploma.

Kathryn testified that after she received her high school diploma, she earned a license to work as a certified nursing assistant, had plans to attend college to earn nursing degrees, and hoped to eventually attend medical school. She testified that the older children's difficulties with school were not Julie's fault and that Julie encouraged her to go to school, fought with her about school, and did her best to get Kathryn to attend school. She testified that on occasion, Tyler had offered to let her skip school and stay home.

On cross-examination, Tyler acknowledged that Sierra is "doing well" in school. At the time of trial, Sierra was in first grade.

Tyler presented evidence about Quinn's interaction with law enforcement after Julie was awarded his custody in 2005. He presented evidence involving a "Classification Study" completed by a youth rehabilitation and treatment center in March 2008, which predated the initial award of custody regarding Sierra in August 2009. Tyler also presented evidence of legal complaints filed against Quinn from 2010 through 2013, all of which appear to have occurred after he turned 18 years of age.

Tyler presented evidence that Kathryn had become pregnant at the age of 15 and presented evidence concerning a charge of statutory rape brought against Kathryn's boyfriend, who had been 18 years of age when Kathryn became pregnant. The evidence adduced indicates that the statutory rape charge was ultimately reduced to a charge of contributing to the delinquency of a minor.

Kathryn testified that she and her child's father remain together, are both currently employed, and are supporting their child together. At the time of trial, Kathryn was employed as a certified nursing assistant, while her child's father was employed as an electrician.

Tyler acknowledged on cross-examination that he is estranged from Quinn and that his relationships with Kathryn, Quinn, and Whitney are all "strained" or "shaky." Kathryn and Whitney both testified, and both testified that they are estranged from Tyler or have little to no relationship with him. Kathryn testified that she does not want to have a relationship with him. Whitney testified that she has a child and has made attempts to establish a relationship with Tyler and between Tyler and her child, but that Tyler does not visit.

Tyler also presented evidence concerning an allegation that Sierra was sexually touched by Tyler's stepson during one of Tyler's visitations with Sierra. The evidence related to this incident indicates that Sierra accused the stepson of sexually touching her, that Julie sought a protection order against the stepson, and that an investigation was conducted by law enforcement and the Department of Health and Human Services, which resulted in a finding that the allegation was unfounded. Tyler testified that Julie had made other allegations about individuals inappropriately touching Sierra in 2007 or 2008, which was prior to the initial order establishing custody of Sierra in August 2009. He testified that Julie made another allegation about another individual in 2011. Kathryn testified that she was the first person Sierra told about the alleged incident and that Sierra had never changed her story about what she alleged happened.

On cross-examination, Tyler testified that when he had the opportunity to do so, he took Sierra and his stepson both into a room and confronted them about Sierra's accusation. He

testified that when he confronted them, Sierra indicated the incident had happened and the stepson denied it had happened. He also testified that "from the reports that [he] read from the . . . Police Department, nothing added up" concerning the timing of when Sierra alleged the incident had happened.

Julie testified that the second time she had withheld visitation and been in contempt of the court's prior visitation orders it had been because of this incident and because of Sierra's allegation that Tyler's stepson had sexually touched her.

Tyler also presented evidence concerning an allegation Julie had made about Sierra's being physically abused by Tyler, Tyler's wife, Tyler's stepson, and Tyler's wife's grandmother. He testified that this allegation occurred in 2012 or 2013, and an investigation resulted in the allegation being deemed unfounded.

Tyler also presented evidence about a variety of credit complaints against Julie concerning her lack of payment of a variety of bills. Tyler attempted to present exhibits referring to the complaints, establishing that they largely occurred between August 2008 and April 2009, predating the initial custody order concerning Sierra in August 2009. The court sustained objections to exhibits related to these complaints on the basis of relevance, and Tyler has not alleged the court's rulings were erroneous.

Julie acknowledged having financial struggles, but testified that Sierra is her priority and that her financial struggles had not resulted in Sierra's being denied any necessities. She testified that Sierra has always been taken care of, fed, and clothed.

Finally, Tyler presented evidence from witnesses who testified about Julie being deemed to have "voluntarily resigned" from one employment in January 2012 when she failed to appear at work or notify her employer that she would be absent and being terminated from another employment in 2010 for absenteeism and being tardy. Tyler did not present any evidence that Julie's termination from either employment resulted in any effect on Sierra.

At the time of trial, Julie was employed as a certified nursing assistant and medical technician. She testified that she had been with her existing employer for 3 years and that she was working on a part-time basis until a full-time position opened.

In December 2013, the district court entered an order. The court found that Julie had been Sierra's primary caregiver since the time of her birth and that by all accounts she was well cared for.

The court specifically found that Julie had acted appropriately in reporting the suspicion of sexual assault of Sierra, now had to accept the results of the investigation, and contrasted Julie's reporting of suspicion with testimony that Tyler had confronted Sierra about the accusation and had not believed her.

With respect to the evidence concerning issues experienced by the parties' older children, the court held that "it is as easy to speculate that the problems resulted from the poor relationship with [Tyler] as from poor parenting by [Julie]. However, either is speculation." The court held that the problems experienced by the older children did not establish that Julie "is a poor parent who is incapable of raising Sierra any more than that [Tyler] should not be around Sierra as she grows older."

The court specifically held that Tyler had failed to demonstrate any deterioration in the quality of care Julie provides for Sierra and held that it could not conclude that there has been a

material change of circumstances or that it would be in Sierra's best interests to modify custody. The court dismissed Tyler's complaint for modification.

This appeal followed.

## III. ASSIGNMENT OF ERROR

On appeal, Tyler's sole assignment of error is that the district court "erred in applying an incorrect standard in custody modifications thereby depriving [him] of a substantial right and a just result."

## IV. ANALYSIS

Tyler argues on appeal that the district court in this case applied the wrong standard in evaluating whether a modification of the prior custody order involving Sierra was appropriate. He argues that "[i]n this case, the trial court revealed its own standard regarding custody modifications as being whether the child is well-fed, well-housed, and well-clothed . . . ." Brief for appellant at 22. He argues that "[t]hat is not the standard for evaluating whether a material change exists sufficient to require a custody change." *Id.* Tyler then correctly quotes the well-established legal standards and requirements for modification of custody.

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unconscionable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.* The party seeking modification of child custody bears the burden of showing a material change in circumstances. *Schrag v. Spear*, 22 Neb. App. 139, 849 N.W.2d 551 (2014); *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013).

Prior to the modification of a child custody order, two steps of proof must be taken by the party seeking modification. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005). First, the party seeking modification must show a material change in circumstances, *occurring after the entry of the previous custody order* and affecting the best interests of the child. *Id.* (emphasis supplied). Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id*. Demonstrating a material change in circumstances requires evidence showing that something has occurred, which if the trial court had been aware of the existence of these circumstances when entering the prior custody order, the trial court in the best interests of the child would have granted custody to the other parent. See *id*.

While we agree with Tyler that the standard for modification of custody is not simply an evaluation of whether the child is well-fed, well-housed, and well-clothed, we disagree that the trial court reduced its analysis to such a standard. The trial court noted those factual circumstances, but specifically found that Tyler had failed to demonstrate a material change of circumstances warranting modification of the prior custody order.

It appears that Tyler has failed to appreciate the crucial core requirement in the standard for modification of custody--that there must be *a material change of circumstances and a showing that modification would be in the best interests of the child*. Although Tyler spends approximately a page of his appellate brief citing to that standard and points us to a number of cases espousing that standard, he then shifts his entire appellate argument to an argument about the Nebraska Parenting Act's guidelines for assessing the best interests of the child, and fails to articulate what *material change of circumstances* has occurred since entry of the initial custody order in August 2009.

Tyler then presents this court with more than nine pages of discussion about the various factors of a best interests analysis, arguing why he is better suited to provide for Sierra's best interests. The entirety of that argument, however, is devoid of any indication of any circumstances that have changed since entry of the initial custody determination in August 2009. Tyler's argument on appeal appears much more suited to an argument related to an initial determination of custody, rather than a modification. Indeed, at trial, Tyler objected to various questions and testimony proffered on behalf of Julie as being related to "pre decree," seemingly referring to the dissolution decree. But in this case, the relevant order is not the dissolution decree because it did not address custody of Sierra, who was not even born when the decree was entered. The relevant order in this case, for assessing whether there has been a material change of circumstances, is the August 2009 order first establishing custody of Sierra.

Tyler presents arguments about the older children's academic struggles as indicative that Julie does not value education. He presents significant argument about the children who were in school at the time of the dissolution decree and argument about Quinn's and Kathryn's academic performance in 2008 and 2009. As noted above, the vast majority of that evidence concerns time periods prior to the entry of the custody order concerning Sierra in August 2009 and does not demonstrate any material change of circumstances *since* the entry of that custody decree. Moreover, to the extent some of the evidence did concern academic performance of those children after August 2009, there was evidence adduced directly contradicting the suggestion that such academic struggles were Julie's fault.

Tyler presents significant argument about Quinn's legal difficulties. As noted above, the vast majority of that evidence reflects behavior by Quinn after he turned 18 years of age--in fact, a number of the legal encounters occurred after Quinn was at least 20 years of age. Tyler has not demonstrated that Quinn's legal problems were caused by Julie or that they reflect any change of circumstances related to Julie's care of Sierra. As the trial court noted, the court can just as easily speculate that Quinn's legal difficulties are a result of the hostility between Tyler and Julie and Quinn's estranged relationship from Tyler--but speculation is not a proper basis for finding a material change of circumstances warranting modification of custody of another child.

Tyler presents significant argument about Julie's financial difficulties, pointing to his testimony about "collection lawsuits where [Julie] is being sued for outstanding bills." Brief for appellant at 31. However, as noted above, a number of those incidents also predated the initial custody order of August 2009. To the extent some of the incidents have occurred since the entry of the custody order, Tyler has not presented any evidence that any of the incidents have resulted in any impact on Sierra's care. As the trial court concluded, the evidence indicates that Sierra has always been well cared for, those financial difficulties notwithstanding.

He argues that the trial court "failed to see the point that a parent who is unable to manage money to pay for basic necessities is certainly relevant information as to the general welfare of the child" and argued that "[b]usinesses and professionals stop providing services when an account remains unpaid" and that "[i]f the services are not available for [Julie] they will not be available for Sierra either." Brief for appellant at 31. Tyler presented no evidence that any business or professional has stopped providing any services to Julie, and he certainly presented no evidence that any services had ever been denied to Sierra.

Tyler's speculation that some provider could stop providing some services does not establish a material change of circumstances since entry of the custody order warranting modification of custody. In fact, when the court ruled on an objection to Tyler's offer of evidence related to collection lawsuits, Tyler attempted to make the same argument he now makes on appeal and asserted to the trial court that "if you don't pay these bills, people stop giving you those services" and that "if they stop giving you those services then they're not available to the child any longer." The trial court specifically responded that Tyler's argument "requires [the court] to speculate." There was no evidence adduced to suggest that Tyler's argument was grounded in anything other than speculation about potential future occurrences, and there was no evidence of any such denial of services to Julie or Sierra.

In short, the arguments Tyler presents on appeal are generally all presented in the context of arguing that he would be a more appropriate person to have custody of Sierra. His arguments appear more suited to an appeal from an initial custody determination--an appeal he did not take. He argues that he can provide a better home environment and a more stable environment and largely points to situations that have existed since before that initial custody determination, such as his residence and his employment, and the parties' circumstances since the time of the dissolution decree. What he has not demonstrated, as the trial court specifically found, is that there has been any material change of circumstances since the entry of the initial custody order in August 2009. Tyler's complaint for modification, his testimony at trial, and his arguments on appeal all fail to articulate what material change of circumstances has occurred since entry of the initial custody award in August 2009. In requiring him to do so and dismissing his complaint for failing to do so, the trial court did not apply an incorrect standard. Tyler's assertions on appeal are meritless.

## V. CONCLUSION

On our de novo review of the record, we find no abuse of discretion by the district court. Tyler failed to demonstrate a material change in circumstances warranting modification of the custody order regarding Sierra. We affirm.

AFFIRMED.